UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CANDACE ROBE BIGGERSTAFF,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. CV 15-853 JC

MEMORANDUM OPINION AND ORDER OF REMAND

## I. SUMMARY

On February 6, 2015, Candace Robe Biggerstaff ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; February 10, 2015 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 19, 2008, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 182, 259). Plaintiff asserted that she became disabled on March 5, 2002 (*i.e.*, "alleged onset date"), due to bilateral thoracic outlet syndrome. (AR 19, 182, 294). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), and a vocational expert on April 4, 2011. (AR 153-76). On May 6, 2011, the ALJ determined that plaintiff was not disabled through December 31, 2007 ("date last insured"). (AR 182-90).

On October 9, 2012, the Appeals Council granted review, vacated the ALJ's May 6, 2011 decision, and remanded the matter for further administrative proceedings. (AR 198-200).

On March 18, 2013, the ALJ again examined the medical record and also heard testimony from plaintiff (who was again represented by counsel), and a vocational expert. (AR 134-52).

On March 29, 2013, the ALJ again determined that plaintiff was not disabled through the date last insured.[1] (AR 19-28). Specifically, the ALJ found that through the date last insured: (1) plaintiff suffered from the following severe impairments: musculoligamentous sprain/strain of the cervical spine, overuse syndrome of the upper extremities, status post left shoulder subacromial decompression, and thoracic outlet syndrome status post multiple left nerve

---

[1]The ALJ stated that the summary of the medical and nonmedical evidence in his May 6, 2011 decision was incorporated by reference into, and thus modified or supplemented by, his March 29, 2013 decision. (AR 19).

entrapment neuroplasties (AR 21); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 21); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 416.967(b) with additional limitations[2] (AR 22); (4) plaintiff was unable to perform any past relevant work (AR 26); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically furniture rental consultant, and cashier (AR 27); and (6) plaintiff's allegations regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely credible (AR 25).

The Appeals Council denied plaintiff's application for review. (AR 9).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial

///

---

[2]The ALJ determined that plaintiff: (i) could lift/carry 10 pounds frequently and 20 pounds occasionally; (ii) could stand/walk and sit for 6 hours each in an 8-hour workday; (iii) could do occasional climbing, balancing, stooping, kneeling, crouching, and crawling; (iv) could not do above shoulder level work bilaterally; (v) could occasionally work at shoulder level bilaterally; (vi) could do occasional power grasping, torquing, pinching and pushing/pulling with the left upper extremity; (vii) was precluded from prolonged neck posturing greater than 10 minutes at a time without being able to stretch the neck; and (viii) was limited to unskilled work. (AR 22).

gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch

v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision. Robbins, 466 F.3d at 882 (a court may not substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citation omitted).

Even when an ALJ's decision contains error, it must still be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration,

775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) the ALJ's path may reasonably be discerned, even if the ALJ explains the ALJ's decision with less than ideal clarity. Id. (citation, quotation marks, and internal quotations marks omitted).

A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless. Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 6684997, *4 (9th Cir. Nov. 3, 2015) (citations omitted); see also Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (district court may not use harmless error analysis to affirm decision on ground not invoked by ALJ) (citation omitted). Where a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh, 792 F.3d at 1173 (remanding for additional explanation where ALJ ignored treating doctor's opinion and court not could not confidently conclude ALJ's error was harmless); Treichler, 775 F.3d at 1099-1102 (where agency errs in reaching decision to deny benefits and error is not harmless, remand for additional investigation or explanation ordinarily appropriate).

**IV. DISCUSSION**

Plaintiff testified, among other things, that (i) she had constant burning and throbbing pain which radiated from her ears to her legs (AR 159); (ii) she needs to lie down for "most of the day" because of her pain (AR 163); (iii) she could sit no more than 10-15 minutes at a time before experiencing pain, and her pain level increases "significantly" if she lifts five pounds of weight "four times a day" (AR 171); and (iv) her husband does the household chores and most of the grocery shopping, and plaintiff needed to hire people to help her run errands, shop, and cook (AR 163).

///

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 25-30). The Court agrees. As the Court cannot find the ALJ's error harmless, a remand is warranted.

**A. Pertinent Law**

When a claimant provides "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged," and there is no affirmative finding of malingering, the ALJ may discount the credibility of the claimant's subjective complaints only by "offering specific, clear and convincing reasons for doing so." Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 6684997, *5 (9th Cir. Nov. 3, 2015) (citation and internal quotation marks omitted). This requirement is very difficult to meet. See Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and internal quotation marks omitted).

An ALJ's credibility determination must be specific enough to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's subjective complaints. Brown-Hunter, __ F.3d __, 2015 WL 6684997, at *5 (citation and quotation marks omitted). Consequently, an ALJ must specify the testimony he or she finds not credible, provide "clear and convincing reasons" why the particular testimony lacks credibility, and identify the specific evidence which undermines the claimant's subjective complaints. See id. at *1, *5-*6. "General findings are insufficient[.]" Id. at *5 (citations and quotation marks omitted). Nonetheless, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in the testimony are solely functions of the Commissioner.) (citation omitted).

**B. Analysis**

Here, the ALJ appears to have asserted two reasons for finding the alleged severity of plaintiff's pain "not entirely credible," specifically (1) despite the "myriad of subjective complaints," the "few objective findings" in the record "[only] support a capacity for light work[]" with postural limitations (AR 25); and (2) "[plaintiff's] daily activities through her date last insured are consistent with a residual functional capacity for at least light activity, including attending physical therapy, attending AA meetings, attending church, going to the mall and movies with friends, cooking, caring for pets, caring for self, pulling weekends [sic] in the garden, handling money, going out alone, going away for weekends with her husband, and enjoying her photography hobby" (AR 25) (citing Ex. 12F [AR 729-33]). Such reasons, however, are insufficient to justify discounting plaintiff's credibility.

First, the ALJ's conclusory assertion that plaintiff's daily activities were "consistent with a residual functional capacity for at least light activity," followed by a seriatim list of generic activities apparently drawn from a state-agency reviewing doctor's summary of plaintiff's activities of daily living, is not sufficiently specific. Even if the ALJ intended to find that such daily activities undermined the credibility of plaintiff's subjective complaints, the ALJ did not specify *which* of plaintiff's specific daily activities purportedly conflicted with *which* of plaintiff's subjective complaints. A general finding that plaintiff's collective daily activities are inconsistent with the alleged severity of some or all of plaintiff's subjective complaints is not sufficiently specific to permit the Court to determine whether the ALJ discounted plaintiff's credibility on permissible grounds. See, e.g., Brown-Hunter, __ F.3d __, 2015 WL 6684997, at *1, *5-*6 (legal error where ALJ failed to identify claimant's testimony found not credible and failed to "link that testimony to the particular parts of the record supporting her non-credibility determination") (citing Burrell v. Colvin, 775 F.3d 1133, 1139

(9th Cir. 2014)); Burrell, 775 F.3d at 1138-39 (rejecting Commissioner's argument that conflicts between claimant's complaints of headaches and treatment records for such headaches was a specific, clear, and convincing reason to support ALJ's credibility finding, where the ALJ never stated that rejection of plaintiff's allegations regarding headaches specifically rested on finding that claimant's treatment records for such headaches were inadequate). While the record may, as defendant suggests (Defendant's Motion at 14-15), contain several inconsistencies between plaintiff's daily activities and plaintiff's subjective complaints which might impact plaintiff's credibility, the ALJ did not find as much. See Brown-Hunter, __ F.3d __, 2015 WL 6684997, at *6 ("[W]e are constrained to review the reasons the ALJ asserts.") (quoting Connett, 340 F.3d at 874) (emphasis omitted).

Second, while an ALJ may discount the credibility of a claimant's subjective complaints where the alleged severity of the claimant's pain is inconsistent with the "level of activity" of the claimant's daily activities, see Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998), the record does not support such a finding here. In short, the evidence here reflects that plaintiff's ability to engage in various daily activities was much more limited than the ALJ's decision suggests. For example, the ALJ stated that plaintiff was able to attend physical therapy, AA meetings, and church, and that plaintiff would go to the mall and movies with friends. (AR 25). Plaintiff testified, however, that she would only "*try* to go" to AA meetings twice a week *depending* on how she felt, and that she effectively sponsored only one out of three potential other AA members (the two others "don't really call"). (AR 172) (emphasis added). In a Function Report dated May 28, 2008, plaintiff said she only went to church "once or twice a month," that before socializing she would do physical therapy (which "sometimes [] causes [her] to be physically sick"), and that after such activities plaintiff did not have "much left. . . ." (AR 313). Plaintiff also stated that sometimes "girlfriends" would take her out to coffee or to bible study or the movies, but she would only do

"one [social activity] once a week." (AR 313). In addition, plaintiff testified that after doing "something . . . with a friend" she would "need to come home and lay down" because of her pain. (AR 163).

The ALJ also noted that plaintiff's daily activities through her date last insured included cooking, caring for pets, pulling [weeds] in the garden, and handling money. (AR 25). However, in her Function Report plaintiff stated that she could make only simple meals on her own that required little or no preparation (*e.g.*, pre-made items that could be "just put on a plate or bowl") (AR 311), and, as the ALJ noted, plaintiff testified that she had hired people "to help [her] do errands and do shopping and cook . . ." (AR 162). Plaintiff also stated that, personally, she would only feed her dogs, and that a friend would walk the dogs, and a mobile groomer would bathe them. (AR 310). The ALJ points to nothing in the record which reflects that plaintiff does any gardening, and, in fact, plaintiff noted in her Function Report that she hired a gardener. (AR 311). Contrary to the finding that plaintiff was generally able to handle money, in her Function Report plaintiff stated that she could <u>not</u> pay bills, count change, or handle a savings account, and that while she could use a checkbook or money orders, her husband had actually "taken over [the couple's] checking and bills." (AR 312). While the ALJ also stated that plaintiff "was able to do [sic] carry light groceries" (AR 25), plaintiff testified that her husband generally does their grocery shopping or they would order groceries on line, and that if plaintiff "[had] to have something" she would only get "a couple things" in "light bags" and have the items delivered whenever possible. (AR 162).

The ALJ also stated that plaintiff engaged in various social activities, such as "going away for weekends with her husband," traveling to France for seven to ten days to attend "a friend's daughter's soccer camp," traveling to Bass Lake and Yosemite, "go[ing] to professional athletic games," and "enjoying her photography hobby." (AR 25). Plaintiff testified, however, that in the 11 years

since she stopped working she had only been to France once, and had gone to her best friend's parents' house in Bass Lake only about four or five times. (AR 141-42, 173). Plaintiff also testified that the other people on the France trip "pretty much did everything physically for [her]," and that plaintiff mostly remained behind where they were staying in France because she had been unable to "keep up." (AR 141, 173). Plaintiff testified that she went to Bass Lake to spend time with the "people [she] love[s]," that she did not drive herself there, and that she basically did "nothing" once she arrived. (AR 142, 173). While plaintiff acknowledged that she *had* gone to her children's baseball games and to "professional baseball games," she also testified that it was "pretty hard to do that anymore." (AR 172). In addition, the ALJ identified nothing in the record which suggests that plaintiff attended such games during the relevant time period (*i.e.*, from the alleged onset date to the date last insured), much less that plaintiff did so with any frequency. (AR 25). In her Function Report, plaintiff stated that she would take photographs at certain times, but that her husband needed to carry "everything," and that doing so would exacerbate her pain for at "least 5-7 days" thereafter such that plaintiff would sometimes be unable to get out of bed. (AR13). Also, plaintiff testified that she had attempted to have a photography business but was unable to produce work in a timely or economic fashion because of her pain. (AR 163).

Even assuming that plaintiff retained the ability to carry on certain minimal activities of daily living, the ALJ did not find, nor does the record reflect, that such activities "consume[d] a substantial part of [plaintiff's] day," and thus such evidence does not constitute a clear and convincing reason for discounting plaintiff's credibility. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Similarly, plaintiff's limited attempts to participate in physical therapy and treat her alcohol addiction, infrequent social activities, and daily "caring for [her]self" and "going out alone"

are not materially inconsistent with plaintiff's allegations of disabling pain. See Vertigan, 260 F.3d at 1049 ("One does not need to be 'utterly incapacitated' in order to be disabled.") (citation omitted); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Third, since, as detailed above, the ALJ did not provide any other clear and convincing reason for discounting the credibility of plaintiff's symptom testimony, the ALJ's conclusory assertion that "[despite] a myriad of subjective complaints . . . [the] objective findings support a capacity for light work" (AR 25) is an insufficient basis for discrediting plaintiff's complaints. The ALJ's implicit finding that the objective medical evidence does not support the severity of plaintiff's complaints cannot, without more, justify discounting the credibility of plaintiff's pain testimony. See Burch, 400 F.3d at 681 ("lack of medical evidence cannot form the sole basis for discounting pain testimony"); see also Treichler, 775 F.3d at 1103 ("An ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient [to permit proper review of ALJ's adverse credibility determination].") (quoting Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009)).

Finally, the Court cannot conclude that the above errors were harmless because it cannot "confidently conclude that no reasonable ALJ, when fully crediting the [plaintiff's] testimony, could have reached a different disability determination." Marsh, 792 F.3d at 1173 (quoting Stout, 454 F.3d at 1055-56) (quotation marks omitted). Therefore, remand is warranted for the ALJ to reassess plaintiff's credibility.

///

///

///

## V. CONCLUSION[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 20, 2015

/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[3]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the Commissioner may wish to reconsider the medical opinion evidence provided in connection with plaintiff's workers' compensation case. Although the ALJ gives "great weight" to such opinion evidence (see AR 23, 26) (citing Ex. 21F [AR 901-84] Dr. Alan Sanders' "Highly Complex Orthopaedic Examination and Report"), the decision does not reflect that the ALJ properly considered the implications medical findings drawn from a workers' compensation opinion may have for purposes of a Social Security disability determination. See, e.g., Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988) (finding ALJ's interpretation of treating physician's opinion erroneous where record clear that ALJ affirmatively failed to consider distinction between categories of work under social security disability scheme versus workers' compensation scheme).

[4]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted); see also Connett, 340 F.3d at 876 (remand is an option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).